# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS P. CONNELLY, JR.          :
23 Petsch Road                   :
Reading, PA 19606,               :
                                 :   CIVIL ACTION NO.:
T.P.C., III (a Minor)            :
819 Pleasant Hill Road           :
Wallingford, PA 19086,           :   _____
                                 :
E.M.C. (a Minor)                 :   JURY TRIAL DEMANDED
819 Pleasant Hill Road           :
Wallingford, PA 19086,           :
                                 :
O.W.C. (a Minor)                 :
180 Woods Road                   :
Oxford, PA 19363,                :
                                 :
                 Plaintiffs,     :
                                 :
v.                               :
                                 :
LARISSA C. CONNELLY              :
180 Woods Road                   :
Oxford, PA 19363,                :
                                 :
JULIE M. POTTS                   :
1004 Rock Creek Road             :
West Chester, PA 19380,          :
                                 :
POTTS, SCHOEMAKER, AND           :
GROSSMAN, L.L.C.                 :
140 W. Gay Street                :
Suite 200                        :
West Chester, PA 19380,          :
                                 :
CRAIG B. HUFFMAN                 :
113 East Evans Street            :
Matlack Building, Suite D-1      :
West Chester, PA 19380,          :
                                 :
                                 :
                                 :

**ECKELL, SPARKS, LEVY,**                  :
**AUERBACH, MONTE, SLOANE,**               :
**MATTHEWS & AUSLANDER, P.C.**             :
**113 East Evans Street**                  :
**Matlack Building, Suite D-1**            :
**West Chester, PA 19380,**                :
                                           :
**PAUL C. TROY**                           :
**510 Swede Street**                       :
**Norristown, PA 19401-4807**              :
                                           :
**KANE, PUGH, KNOELL, TROY &**             :
**KRAMER, L.L.P.**                         :
**510 Swede Street**                       :
**Norristown, PA 19401-4807,**             :
                                           :
**JOHN DOE CORPORATION 1**                 :
**(Name and Address unknown),**            :
                                           :
**TRACY L. CHRISTMAN**                     :
**Chester Co. Family Court**               :
**201 W. Market Street**                   :
**PO Box 2746**                            :
**West Chester, PA 19380-0989,**           :
                                           :
**RICHARD E. LOMBARDI**                    :
**Chester Co. Family Court**               :
**201 W. Market Street**                   :
**PO Box 2746**                            :
**West Chester, PA 19380-0989,**           :
                                           :
**BRIAN J. MCCABE**                        :
**PSP Troop "J"**                          :
**2 Moxley Rd.**                           :
**Avondale, PA 19311,**                    :
                                           :
**WAYNE AND JANET PREWITT,**               :
**HUSBAND AND WIFE**                       :
**180 Woods Road**                         :
**Oxford, PA 19363,**                      :

|  | : |
| --- | --- |
| **ARVIL PREWITT** | : |
| **180 Woods Road** | : |
| **Oxford, PA 19363,** | : |
|  | : |
| **DORA L. KASSEL** | : |
| **819 Pleasant Hill Road** | : |
| **Wallingford, PA 19086,** | : |
|  | : |
| **LYN B. SCHOENFELD** | : |
| **25 W. Second Street** | : |
| **PO Box 900** | : |
| **Media, PA 19063,** | : |
|  | : |
| **SCHOENFELD, SURKIN,** | : |
| **CHUPEIN & DEMIS, P.C.** | : |
| **25 W. Second Street** | : |
| **PO Box 900** | : |
| **Media, PA 19063,** | : |
|  | : |
| **SCOTT A. LISGAR** | : |
| **101 Darby Road** | : |
| **Havertown, PA 19083,** | : |
|  | : |
| **KELLER, LISGAR, & WILLIAMS,** | : |
| **L.L.P.** | : |
| **101 Darby Road** | : |
| **Havertown, PA 19083,** | : |
|  | : |
| **ROBERT J. KRANDEL** | : |
| **A.O.P.C.** | : |
| **1515 Market Street** | : |
| **Suite 1414** | : |
| **Philadelphia, PA 19102,** | : |
|  | : |
| **ANNA MARIE CIARDI** | : |
| **Frick Building, Ste. 5800** | : |
| **PO Box 62675** | : |
| **Harrisburg, PA 15219,** | : |
|  | : |

**VANESSA PIERRE**                    :
**Baldwin Tower, Suite 102 S.**       :
**1510 Chester Pike**                 :
**Eddystone, PA 19022,**              :
                                      :
                                      :
**SANDRA GARRISON**                   :
**20 South 69th Street, 4th Flr.**    :
**Upper Darby PA, 19082,**            :
                                      :
                                      :
**MEG SNEAD**                         :
**625 Forster Street**                :
**Harrisburg, PA 17120,**             :
                                      :
                                      :
              **Defendants.**         :

---

### COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, CIVIL CONSPIRACY, VIOLATION OF 42 U.S.C. 1983, NEGLIGENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE AND FOR DECLARATORY RELIEF.

Plaintiff-Father, Thomas P. Connelly, Jr. ("Plaintiff-Father" or "Plaintiff-Father Connelly"), in his Complaint against the defendants alleges as follows.

### INTRODUCTION

1.     Plaintiff-Father, Thomas P. Connelly, Jr. ("Plaintiff-Father" or "Plaintiff-Father Connelly"), is a disabled veteran of the United States Navy, honorably discharged.

2.     Plaintiff-Father and Defendant, Larissa C. Connelly ("Defendant Larissa Connelly" or "Defendant Connelly") are married but separated. They have one child together, Plaintiff O.W.C., a five-year-old daughter.

3.     Early in 2019, prior to Plaintiff-Father Connelly and Defendant Larissa Connelly's separation later that year, Plaintiff-Father was living in the Reading,

Pennsylvania area during the work week, as his then-employment position required an in-office presence, and the commute from the family's home in Woodbury, New Jersey to Reading was two and one-half (2.5) hours each way.

4.      Defendant, Larissa Connelly, then an unemployed hairdresser, had refused to work, so Plaintiff-Father Connelly was the sole provider to the family. In fact, Plaintiff-Father Connelly paid for Defendant Connelly's attendance at community college.

5.      Plaintiff-Father Connelly at that time began to read to Plaintiff O.W.C., at her bedtime, every evening, to maintain his relationship with her while he was away. This became Plaintiff-Father Connelly's 'lifeline' to his daughter and was deeply fulfilling to both him and O.W.C.

6.      This 'reading time' continued after Plaintiff-Father Connelly and Defendant, Larissa Connelly's separation in August 2019.

7.      Upon her August 2019 separation from Plaintiff-Father, Larissa C. Connelly moved in with her parents, Defendants Wayne Prewitt and Janet Prewitt, and her brother, Defendant Arvil Prewitt, a then-unemployed forty-something with a gun collection, on a seven-acre compound in Oxford, Pennsylvania.

8.      After the parties' separation, their customary division of parenting time was as follows: Plaintiff-Father Connelly had the minor child, Plaintiff O.W.C., every weekend at his home in Reading, Berks County, from Friday evening until Sunday evening, and Larissa C. Connelly had her at all other times.

9.      Plaintiff-Father Connelly and Defendant Larissa Connelly had agreed that they would divorce amicably, that Plaintiff-Father Connelly, who is legally

trained, would handle the paperwork, and that they would not make any monetary claims against one-another.

10.   In reliance on Defendant Connelly's promise, Plaintiff-Father shared one-half (½) of the proceeds of the sale of the parties' home at 58 Laurel Street, Woodbury NJ 08096, the deed to which was in his name only.

11.   Defendant Connelly broke her promise in March 2020, hiring attorney Defendant Julie M. Potts ("Defendant Potts"), a former Assistant District Attorney of Chester County (which she touts on her website), to prosecute Defendant Connelly's divorce and custody matters with Plaintiff-Father Connelly.

12.   Plaintiff-Father and Defendant, Dora L. Kassel, Plaintiff-Father's first wife, who is now remarried to a Villanova chemistry professor, have two (2) children together. They are minor Plaintiff T.P.C., III,, age 15 and minor Plaintiff, E.M.C., age 13. Plaintiff-Father and Defendant Kassel separated in 2010 with the divorce having been finalized in 2011.

13.   At the time of the entry of the divorce decree, Defendant Kassel represented through her then-attorney, David I. Dubin, Esquire, to Plaintiff-Father that if Plaintiff-Father agreed to relinquish the marital home to Kassel and terminate his spousal support claims against her, Kassel, in return, would not seek child or spousal support, ever.

14.   From the time of the parties' separation, Plaintiffs T.P.C., III, and E.M.C. visited Plaintiff-Father every weekend, with adjustments made as necessary to accommodate the parties' and children's schedules.

15.     This arrangement served Defendant Kassel very well, as she in its early days needed to perform overnight duty as a junior veterinarian (which she scheduled for Plaintiff-Father overnight visitation periods) and functioned without complaint from either parent about the parenting ability or moral character of the other for more than ten (10) years.

16.     That was true even though in 2014 or 2015, Defendant Kassel (then "Dora L. Connelly") was charged with Driving While Intoxicated (D.W.I.) and was admitted into the Accelerative Rehabilitation Disposition (A.R.D.) program.

17.     Although Plaintiff-Father became aware of the charges, he understood that the minor children were not in the vehicle at the time and trusted that there was no danger to them posed by Defendant Kassel's unfortunate choice to (allegedly) drive drunk.

18.     In July 2020, Plaintiff-Father became embroiled in a difficult battle over custody of his daughter Plaintiff O.W.C. with O.W.C. 's mother Defendant Larissa C. Connelly in Chester County.

19.     At that time, there were no issues between Plaintiff-Father, Kassel, and their children, Plaintiffs T.P.C., III, and E.M.C. In fact, Plaintiff-Father and all three of his children along with a family friend visited Hershey Park for a day in July and had a great time.

20.     However, seeing an opportunity to gain an unfair advantage against Plaintiff-Father, Defendant Kassel and her then-attorney, Defendant Lyn B. Schoenfeld, Esq. ("Defendant Schoenfeld") began coordinating and conspiring with Defendant Larissa Connelly and her then-attorney Defendant Potts to prejudice

Plaintiff-Father's position in both custody cases, even getting his three children together for visitation with one-another without his knowledge or consent.

21. What followed was a collusive and conspiratorial scheme by Defendants Larissa C. Connelly, Julie M. Potts, Craig B. Huffman, Dora L. Kassel, Lyn B. Schoenfeld, and Scott A. Lisgar in coordination with corrupt hearing officers, Richard E. Lombardi, and Tracy Christman, AOPC attorney Robert Krandel, Disciplinary Counsel Anna Marie Ciardi, and other co-conspirators and bad-actors, to traffic illegally in Plaintiff-Father's children to the aforesaid co-conspirators' benefit and Plaintiff-Father and his children's detriment, as will be explained in further detail below.

22. As a direct and proximate result of the defendants malicious, illegal, and unethical acts, Plaintiff-Father has been prevented from seeing his children since the Fall of 2020.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 and pendant and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

24. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district or reside in this district.

## THE PARTIES

25. Plaintiff-Father, Thomas P. Connelly, Jr. ("Plaintiff-Father" or "Plaintiff-Father Connelly"), is a disabled veteran of the United States Navy,

honorably discharged. He is an adult citizen of the Commonwealth of Pennsylvania, residing at 23 Petsch Road, Reading, Berks County, Pennsylvania, 19606.

26.     Plaintiff-Father is the biological father and legal co-custodian of Minor Plaintiffs, T.P.C., III,, E.M.C., and O.W.C., the husband of Defendant, Larissa C. Connelly, and the ex-husband of Defendant, Dora L. Kassel.

27.     Minor Plaintiff, O.W.C. ("O.W.C.") is  a minor citizen of the Commonwealth of Pennsylvania, residing at 180 Woods Road, Oxford, Chester County, Pennsylvania. She is the natural child of Plaintiff-Father, Thomas P. Connelly, Jr., and Defendant, Larissa C. Connelly.

28.     Minor-Plaintiff, T.P.C., III, is a minor citizen of the Commonwealth of Pennsylvania, residing at 819 Pleasant Hill Road, Wallingford, Delaware County, Pennsylvania, 19086. He is the natural child of Plaintiff-Father, Thomas P. Connelly, Jr., and Defendant, Dora L. Kassel.

29.     Minor-Plaintiff, E.M.C., is a minor citizen of the Commonwealth of Pennsylvania, residing at 819 Pleasant Hill Road, Wallingford, Delaware County, Pennsylvania, 19086. She is the natural child of Plaintiff-Father, Thomas P. Connelly, Jr., and Defendant, Dora L. Kassel.

30.     Defendant Larissa C. Connelly ("Defendant Larissa Connelly" or "Defendant Connelly") is an adult citizen of the Commonwealth of Pennsylvania, residing at 180 Woods Road, Oxford, Chester County, Pennsylvania, 19363. She is the wife of Plaintiff-Father, Thomas P. Connelly, Jr.

31.     Defendant Julie M. Potts ("Defendant Potts") is an attorney at law of the Commonwealth of Pennsylvania, Attorney Id. No. 92940, and  is  a citizen of the

Commonwealth of Pennsylvania, residing at 1004 Rock Creek Road, West Chester, Chester County, Pennsylvania 19380.

32.     Defendant Potts is Defendant Larissa Connelly's former attorney and a principal and shareholder of Defendant, Potts, Schoemaker, and Grossman, L.L.C. She is sued in her personal and professional capacity.

33.     Defendant Potts, Schoemaker, and Grossman, L.L.C. ("P.S.G." or Defendant "P.S.G.") is a Pennsylvania limited liability corporation, with an office and place of business at 140 W. Gay Street, West Chester, Chester County, Pennsylvania, 19380.

34.     At all times relevant and material hereto, Defendant Potts acted on behalf of, and/or within the scope of her employment with Defendant Defendant P.S.G.

35.     Defendant P.S.G. is the employer of Defendant, Julie M. Potts, and is liable herein on a theory of *respondeat superior*.

36.     Defendant, Craig B. Huffman is an attorney at law of the Commonwealth of Pennsylvania, Atty. Id. No. 82085, with an office and place of business at 113 East Evans Street, Matlack Building, Suite D-1, West Chester, Chester County, Pennsylvania, 19380.

37.     Defendant Huffman is the latest attorney for Defendant, Larissa C. Connelly. He has aided and abetted Defendant Connelly's illegal activities with respect to O.W.C. He is sued in his personal and professional capacity.

38.     Defendant Eckell, Sparks, Levy, Auerbach, Monte, Sloane, Matthews & Auslander, P.C. ("Eckell Sparks" or "Defendant Eckell Sparks") is a Pennsylvania

professional corporation with an office and place of business at 113 East Evans Street, Matlack Building, Suite D-1, West Chester, Chester County, Pennsylvania, 19380.

39.     At all times relevant and material hereto, Defendant Huffman acted on behalf of, and/or within the scope of his employment with Defendant Eckell Sparks.

40.     Defendant, Eckell Sparks is the employer of Defendant, Craig B. Huffman, and are liable herein on a theory of *respondeat superior* for Defendant Huffman's acts and omissions stated herein.

41.     Defendant Paul C. Troy ("Defendant Troy") is an attorney at law of the Commonwealth of Pennsylvania, Atty. Id. No. 60875, with an office and place of business at 510 Swede Street, Norristown, Montgomery County, Pennsylvania 19401-4807.

42.     Defendant Troy is a principal and shareholder in Defendant Kane, Pugh, Knoell, Troy & Kramer, L.L.P., and is sued in his personal and professional capacity and for aiding and abetting the illegal and unethical acts of Defendants Julie M. Potts and P.S.G. described herein.

43.     Defendant Kane, Pugh, Knoell, Troy & Kramer, L.L.P. ("Defendant KPKTK") is a Pennsylvania limited liability professional corporation, with an office and place of business at 510 Swede Street, Norristown, Montgomery County, Pennsylvania 19401-4807.

44.     At all times relevant and material hereto, Defendant Troy acted on behalf of, and/or within the scope of his employment with Defendant KPKTK, and Defendant KPKTK is liable to Plaintiffs for Defendant Troy's acts and omissions in aiding and abetting Defendants Potts and P.S.G.

45.    John Doe Corporation 1 ("Defendant J.D.C. 1") is the professional liability carrier for Defendants, Julie M. Potts and Potts, Schoemaker, & Grossman, L.L.C. and the financier/employer of Defendants Paul C. Troy and Kane, Pugh, Knoell, Troy & Kramer, L.L.P. with respect to the defense of the illegal and unethical acts of Defendants Julie M. Potts and Potts, Schoemaker, and Grossman, L.L.C., and upon information and belief, the financier of Defendants Craig B. Huffman and Eckell, Sparks, Levy, Auerbach, Monte, Sloane, Matthews & Auslander, P.C.

46.    Defendant Tracy L. Christman ("Defendant Christman"), is an attorney of the Commonwealth of Pennsylvania, Atty. Id. No. 314332, employed by the Chester County Family Court Master's Unit, with an office and place of business at Chester Co. Family Court, 201 W. Market Street, PO Box 2746, West Chester, Chester County. Pennsylvania, 19380-0989. She is sued in her personal and professional capacity.

47.    Defendant Richard E. Lombardi ("Defendant Lombardi"), is an attorney of the Commonwealth of Pennsylvania, Atty. Id. No. 54293, employed by the Chester County Family Court Master's Unit, with an office and place of business at Chester County Family Court, 201 W. Market Street, PO Box 2746, West Chester, Chester County, Pennsylvania, 19380-0989. He is sued in his personal and professional capacity.

48.    Defendant, Brian J. McCabe ("Defendant McCabe") is a Pennsylvania State Police Officer assigned to Troop "J", Avondale Barracks, with an office and place of business at 2 Moxley Rd., Avondale, Chester County, Pennsylvania, 19311. He is sued in his personal and professional capacity.

49.     Defendants Wayne Prewitt and Janet Prewitt ("Defendants Janet and Wayne Prewitt") are husband-and-wife, and the parents of Defendant, Larissa C. Connelly. They are adult citizens of the Commonwealth of Pennsylvania, residing at 180 Woods Road, Oxford, Chester County, Pennsylvania, 19363.

50.     Upon information and belief, Defendants Janet and Wayne Prewitt have provided material support to Defendant, Larissa C. Connelly and have aided and abetted Defendant Connelly's illegal activities with respect to O.W.C., by, for example, paying for Defendant Connelly's attorney's fees, and improperly censoring Plaintiff-Father's communications with O.W.C. and by maintaining control over O.W.C at their property in Oxford, Pennsylvania.

51.     Defendant Arvil Prewitt is the 40-something, seldom-employed brother of Defendant Larissa Connelly who lives with his parents, Defendants Janet and Wayne Prewitt and the owner of a gun collection. He has acted as Defendant Connelly's 'muscle', upon information and belief, threatening Plaintiff-Father with semi-automatic rifle fire and riding 'shotgun' during custody exchanges in order to intimidate Plaintiff-Father.

52.     Defendant, Dora L. Kassel, is an adult citizen of the Commonwealth of Pennsylvania, residing at 819 Pleasant Hill Road, Wallingford, Delaware County, Pennsylvania 19086. She is Plaintiff-Father, Thomas P. Connelly, Jr.'s ex-spouse, and the natural mother of Plaintiffs T.P.C., III, and E.M.C.

53.     Defendant Lyn B. Schoenfeld ("Defendant Schoenfeld"), is an attorney at law of the Commonwealth of Pennsylvania, Atty. Id. No. 28170. She is a citizen of

the Commonwealth of Pennsylvania, with an office and place of business at 25 W. Second Street, PO Box 900, Media, Delaware County, Pennsylvania 19063.

54.    Defendant Schoenfeld is Defendant, Dora L. Kassel's former attorney and a principal and shareholder of Defendant, Schoenfeld, Surkin, Chupein & DeMis, P.C. She is sued in her personal and professional capacity.

55.    Defendant Schoenfeld, Surkin, Chupein & DeMis, P.C. ("Defendant S.S.C.D.") is a Pennsylvania professional corporation of the Commonwealth of Pennsylvania, with an address and place of business at 25 W. Second Street, PO Box 900, Media, Delaware County, Pennsylvania 19063.

56.    At all times relevant and material hereto, Defendant Schoenfeld acted on behalf of, and/or within the scope of her employment with Defendant S.S.C.D., and Defendant S.S.C.D. is liable to Plaintiffs for Defendant Schoenfeld's acts and omissions in aiding and abetting Defendants Potts, P.S.G., and Dora L. Kassel.

57.    Defendant S.S.C.D is the employer of Defendant, Lyn B. Schoenfeld, and are sued herein on a theory of *respondeat superior*.

58.    Defendant, Scott A. Lisgar ("Defendant Lisgar"), is an attorney at law of the Commonwealth of Pennsylvania, Atty. Id. No. 83099, with an office and place of business at 101 Darby Road, Havertown, Delaware County, Pennsylvania, 19083. Defendant Lisgar is the latest attorney for Defendant, Dora L. Kassel.

59.    Defendant Lisgar is a principal and shareholder of Defendant, Keller, Lisgar, & Williams, L.L.P. He is sued in his personal and professional capacity.

60.    Defendant, Keller, Lisgar & Williams, L.L.P. ("Defendant K.L.W."), is a limited liability professional corporation of the Commonwealth of Pennsylvania with

an office and place of business at 101 Darby Road, Havertown, Delaware County, Pennsylvania, 19083.

61.    At all times relevant and material hereto, Defendant Lisgar acted on behalf of, and/or within the scope of his employment with Defendant Defendant K.L.W.

62.    Defendant K.L.W. is the employer of Defendant Lisgar, and is liable herein on a theory of *respondeat superior*.

63.    Defendant, Robert J. Krandel, is an attorney at law of the Commonwealth of Pennsylvania, Atty. Id. No. 89485. He is a citizen of the Commonwealth of Pennsylvania, with an office and place of business at Defendant Administrative Office of the Pennsylvania Courts, 1515 Market Street, Suite 1414, Philadelphia, Philadelphia County, Pennsylvania, 19102.

64.    Defendant, Anna Marie Ciardi, is an attorney at law of the Commonwealth of Pennsylvania, Atty. Id. No. 206734 with an office and place of business at Frick Building, Ste. 5800, PO Box 62675, Harrisburg, Dauphin County, Pennsylvania 15219.

65.    Defendant Ciardi is responsible directly to Plaintiffs and for the acts/omissions of the attorneys of the Commonwealth of Pennsylvania complained of herein, for failure to act upon notice to her of the defendant attorneys' herein unethical and/or illegal conduct. Defendant Ciardi is sued in her personal and professional capacity.

66.    Defendant Vanessa Pierre ("Defendant Pierre"), is the Administrator of the Department of Children and Youth Services of Delaware County, with an office

and place of business at Baldwin Tower, Suite 102 S, 1510 Chester Pike, Eddystone, Pennsylvania, Delaware County 19022.

67.    Defendant Sandra Garrison ("Defendant Garrison") is the Director of Delaware County's Office of the Pennsylvania Department of Human Services, with an office and place of business at 20 South 69th Street, 4th Flr., Upper Darby, Delaware County, Pennsylvania, 19082. She is sued in her individual and professional capacity, and for the acts and omissions of Defendant, Vanessa Pierre.

68.    Defendant, Meg Snead ("Defendant Snead"), is the Acting Secretary of the Pennsylvania Department of Human Services, with an office and place of business at 625 Forster Street, Harrisburg, Dauphin County, Pennsylvania, 17120. She is sued in her personal and professional capacity as directly responsible to Plaintiffs and on a theory of *respondeat superior* for the acts and omissions of her defendant employees herein and for declaratory relief in accord and satisfaction

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

## THE "CHESTER COUNTY CASES"

69.    Early in 2019, prior to Plaintiff-Father and Defendant Larissa Connelly's separation, Plaintiff-Father was living in the Reading, Pennsylvania area during the work week, as his employment position there required an in-office presence, and the commute from the family's then-home in Woodbury, New Jersey to Reading was two and one-half hours (2.5) hours each way.

70.    Defendant Larissa C. Connelly, then a hairdresser, had refused to work, so Plaintiff-Father was the sole provider to the family. In fact, Plaintiff-Father paid for Defendant Connelly's attendance at community college.

71.    At that time, Plaintiff-Father began to read to Plaintiff O.W.C., at her bedtime, to maintain his relationship with her while he was away. This became Plaintiff-Father's 'lifeline' to his daughter and was deeply fulfilling to both him and O.W.C.

72.    Plaintiff-Father would often record these sessions to create a 'book on tape' so his children could later listen. *See* www.bringonoroahome.com.

73.    Plaintiff O.W.C. very much looked forward to these sessions. She would often tell Plaintiff-Father about her day, and later would use the time to connect with her (then) 5 pets at Plaintiff-Father's home in Reading (not counting her toads and crickets), and to check up on the organic garden, bonsai trees or kombucha tea projects that she and her father had started together over previous weekends.

74.    However, if Plaintiff O.W.C. had a bad day, she would sometimes ask Plaintiff-Father to 'just read', and Plaintiff-Father would gladly comply. She would invariably fall asleep within fifteen (15) to forty-five (45) minutes, and this gave Plaintiff-Father a sense of peace and connection with his daughter as she would drift into sleep and start to snore.

75.    Plaintiff-Father wanted to challenge Plaintiff O.W.C. to comprehend at a higher level (a technique that he had used with Plaintiffs T.P.C., III, and E.M.C. as well). Plaintiff-Father read to O.W.C. books like *Charlotte's Web*, *Call of the Wild*, *White Fang*, *Sophie's World*, and *Beowulf*. To Plaintiff-Father's surprise, O.W.C. particularly liked the novel *Grendel* (1971) by John Gardner (read with Plaintiff-Father's censoring the more adult parts).

76.    Grendel is the story of Beowulf told from the creature's perspective. The novel turns the tale of Beowulf on its head and does a spectacular job of humanizing the presumed 'monster'. O.W.C. has an amazing capacity for empathy, and she went from 'hating' to 'loving' Grendel, as his suffering was revealed.

77.    Plaintiff-Father and Defendant Larissa Connelly separated in or around August 2019. Defendant Connelly moved in with her parents, Defendants Wayne and Janet Prewitt, both U.S.P.S. mail carriers, and her brother, Defendant Arvil Prewitt, a then-unemployed forty-something with a gun collection, on a seven-acre compound in Oxford, Pennsylvania.

78.    After the parties' separation, their customary division of parenting time was as follows: Plaintiff-Father had the minor child, O.W.C., every weekend, from Friday evening until Sunday evening, and Defendant Larissa Connelly had her at all other times.

79.    Plaintiff-Father and Defendant, Larissa Connelly had agreed that they would divorce amicably, and that Plaintiff-Father, who is legally trained, would handle the paperwork. The parties agreed that they would bring no monetary claims against one-another.

80.    Defendant, Larissa Connelly broke that promise in March 2020, hiring attorney, Defendant, Julie M. Potts to prosecute her divorce and custody matters with Plaintiff-Father.

81.    On March 5, 2020, Defendant Potts filed on Defendant Connelly's behalf a complaint for custody. That complaint did not include any of the specious allegations against Plaintiff-Father later raised by Defendant Larissa C. Connelly in

her petitions for expedited relief and protection from abuse, indicating that these later allegations were meritless, and intended to abuse legal process to Defendant, Larissa C. Connelly's advantage.

82.     On March 17, 2020, Defendant Potts emailed Plaintiff-Father requesting that Defendant Larissa C. Connelly be granted primary custody. Plaintiff-Father agreed, and Potts promised to prepare and forward a stipulation for Plaintiff-Father's signature.

83.     On April 9, 2020, Plaintiff-Father and Defendant Larissa C. Connelly attended mediation with a certified mediator. Neither party was represented by counsel at the mediation.

84.     An amicable agreement was reached as to custody of O.W.C. The agreement was never fully executed, but Plaintiff-Father believed that it would supply the form of order/stipulation promised by Defendant Potts. Potts' promise turned out to be worthless.

85.     Under the mediated agreement, Plaintiff-Father consented to a seventy-two to twenty-eight percent (72%-28%) split of parenting time in favor of Defendant Larissa C. Connelly, who was granted primary custody. This was well beyond the presumptive fifty-fifty percent (50%-50%) split of parenting time in the Commonwealth of Pennsylvania. Plaintiff-Father retained his right to unlimited evening phone time during the week.

86.     On April 10, 2020, the custody conciliation conference originally scheduled for April 16, 2020, was continued to July 2, 2020, due to the COVID-19

pandemic. Plaintiff-Father mistakenly calendared an incorrect date for the continued conference, assigning the correct day but the incorrect month.

87.     On July 2, 2020, Defendants Larissa C. Connelly and Potts attended the 'conciliation' conference presided over by hearing officer Defendant Tracy L. Christman ("Defendant Christman"), a lawyer.

88.     Plaintiff-Father did not appear at the conference due to having calendared the wrong date, but also due to a reasonable belief that the matter had been settled at the mediation, and that Defendant Potts would soon be forwarding a stipulated order (she never did).

89.     No attempt was made by Defendants Larissa C. Connelly, Potts or Christman to contact Plaintiff-Father to inquire as to why he was not in attendance, as is customary in such situations. Had Plaintiff-Father been so contacted, he would have appeared forthwith.

90.     Defendants Potts and Christman, who were/are 'Facebook friends, clearly colluded to obtain a recommended order, later signed by the Hon. Analisa Sondergaard, J.C.C.P. without review ("July Custody Order") that was not consistent with the competent evidence, that Order being wholly prejudicial to Plaintiff-Father, and intended only to harass and abuse Plaintiff-Father.

91.     The July Custody Order limited Plaintiff-Father's time with O.W.C. to five (5) days each month, ordered that a psychiatric evaluation of Plaintiff-Father be obtained at Plaintiff-Father's cost "within thirty (30) days of the date of the Order," and that Plaintiff-Father submit to "SoberLink" alcohol breath testing to be administered four times per day during custodial periods, also at his cost.

92.     The July Custody Order was without factual or legal basis and was clearly not in the best interests of the minor child, Plaintiff O.W.C., as she deserved that her robust relationship with Plaintiff-Father continue unabated, and there was absolutely no reason to depart from the 72/28 split generously agreed to by Plaintiff-Father during the mediation.

93.     Although Plaintiff-Father did not realize it at the time, the *ex parte* proceeding that produced the July Custody Order was illegal, and the Order itself was patently illegal and void *ab initio*, as will be explained in further detail below.

94.     A Pennsylvania county may elect to proceed under 231 Pa. Code § 1915.4-2, and Chester County has so elected. Section 1915.4-2 establishes the procedure for 'conciliation' conferences (under 231 Pa. Code § 1915.4-2(a)), and hearings (under 231 Pa. Code § 1915.4-2(b)).

95.     Although 231 Pa. Code § 1915.4-2 (a)(2) permits a 'conference' "to proceed," 231 Pa. Code § 1915.4-2 (a)(2), when a litigant fails to appear, there is no mechanism for the entry of a recommendation and order in that case. Rather, a 'hearing' pursuant to 231 Pa. Code § 1915.4-2 (b) is to be scheduled where no "agreement has been reached." 231 Pa. Code § 1915.4-2 (a)(2), (a)(4).

96.     The parties could not have agreed because Plaintiff-Father was absent, and no subsequent hearing was scheduled, so the proceedings and resultant recommendation and order were illegal pursuant to 231 Pa. Code § 1915.4-2 (a).

97.     Under 231 Pa. Code § 1915.4-2 (b), there is no provision for *ex parte* proceedings, and a record of the hearing is required. 231 Pa. Code § 1915.4-2 (b)(1).

As no record of the July 2, 2020 conference was made, the proceedings and resultant recommendation and order were illegal pursuant to 231 Pa. Code § 1915.4-2 (b).

98.     Furthermore, 231 Pa. Code § 1915.4-2 (b)(4) provides for a twenty (20) day period for objections prior to the entry of the interim custody order. Here, the recommendation was issued on July 2, 2020, the day of the hearing, and the July Custody Order was entered by the Hon. Judge Sondergaard, apparently without review, six (6) days later, on July 8, 2020, in violation of 231 Pa. Code § 1915.4-2 (b) (4). See 231 Pa. Code § 1915.4-2 (b) (4).

99.     Moreover, the July Custody Order was patently illegal and void *ab initio* because it did not include the language required by Chester County Local Rule of Court 1915.4.A (b) (2).

100.    Chester County Local Rule of Court 1915.4.A. (b) (2) states that "[a]ll temporary orders for custody shall include the following language: NOTICE: UNLESS A DEMAND FOR TRIAL, A CERTIFICATE OF TRIAL READINESS AND A PRE-TRIAL STATEMENT HAVE BEEN FILED, THIS ORDER SHALL BECOME A FINAL ORDER OF THE COURT WITHIN 90 DAYS OF THE MOST RECENT CONCILIATION CONFERENCE." Chester County Local Rule of Court 1915.4.A (b)(2) (emphasis added).

101.    Here, the July Custody Order only included the following language: "NOTICE: UNLESS A DEMAND FOR TRIAL HAS BEEN FILED, THIS ORDER SHALL BECOME A FINAL ORDER OF THE COURT WITHIN 90 DAYS OF THE MOST RECENT CONCILIATION CONFERENCE." Thus, the order is patently illegal, and must be considered void *ab initio*.

102.   The extra-jurisdictional, illegal recommended order solicited from Defendant Christman by Defendants Potts and Larissa Connelly was transmitted to Plaintiff-Father by wire, to wit, via email, and upon information and belief, was uploaded to the Chester County Prothonotary and Family Court servers via internet protocols in interstate commerce.

103.   The Hon. Analisa Sondergaard, J.C.C.P. ("Judge Sondergaard") "rubber-stamped" the Order without review.

104.   The extra-jurisdictional, illegal order solicited from Defendant Christman by Defendants Potts and Larissa Connelly, and signed by Judge Sondergaard, was transmitted to Plaintiff-Father by wire, to wit, via email, and upon information and belief, was uploaded to the Chester County Prothonotary and Family Court servers via internet protocols in interstate commerce.

105.   The above proofs show the illegality of the July 2, 2020 proceeding and resultant recommended order and endorsed judicial order, and the course of conduct of Defendants Potts, Larissa C. Connelly, and Christman in their apparent conspiracy to abuse civil process and to commit a fraud, via interstate wire and/or the mail, calculated to give Defendant Connelly an unfair advantage in the custody matter regarding O.W.C.

106.   Despite the patently biased and baseless nature of the July Custody Order, Plaintiff-Father endeavored to meet all his obligations pursuant to it. He immediately contacted the psychological evaluator named in the order, who indicated she was booked through the following month of August, well beyond the required 30 days specified in the order.

107.   Plaintiff-Father looked online for a qualified forensic psychologist and retained the first one that returned his call and was available, William Morgan, Psy.D.

108.   Plaintiff-Father, through his then counsel, invited Defendants Larissa C. Connelly and Potts to fully participate in the evaluation process, but they refused, claiming that the order required the specific evaluator named in the order, who, as noted, was unavailable.

109.   This was disingenuous because the July Custody Order also required evaluation "within thirty days," and Plaintiff-Father should not have been placed in a position wherein he could be charged with violation of the Order by waiting for the designated psychologist to become available.

110.   The fact that Defendant Larissa C. Connelly objected to Plaintiff-Father's use of an immediately available evaluator, equally qualified to conduct the evaluation indicates that Larissa C. Connelly and Potts had nefarious motives for insisting on a particular evaluator.

111.   Plaintiff-Father immediately paid for SoberLink testing, but went well beyond the scope of the order, paying for testing four times every day, including days outside of his custodial periods. The SoberLink device cost $653.06 and the monthly testing fees were $154.08.

112.   Shortly after the July Custody Order was entered, Defendants Larissa C. Connelly and Potts maliciously schemed to destroy the special reading time between father and daughter, with Potts opining that fifteen (15) minutes per day was "reasonable" under the July 2, 2020 order, and instructing Defendant Connelly to cut off Plaintiff-Father's phone time over Plaintiff-Father's attorney's objection.

113.    This evil act, emotionally harmful to both Plaintiff-Father and his daughter, was an unnecessarily narrow reading of the *ex parte* July Custody Order and did not consider the more than one-year history of Plaintiff-Father and his daughter having communicated in this way nearly every day without incident and to their great mutual benefit.

114.    Defendant Larissa C. Connelly's actions left O.W.C. in tears and asking why 'Daddy wasn't allowed to read to [her] anymore'. Defendant Connelly, through Defendant Potts, maliciously and falsely claimed that the reading time was keeping the child up past her bedtime, when in fact the reading had an almost narcoleptic effect, and the child had informed Plaintiff-Father that she could not fall asleep because she was 'warm'.

115.    Upon information and belief, there is no air conditioning at the Prewitt compound, revealing that the bedtime excuse was entirely pretextual.

116.    On December 21, 2020, Plaintiff-Father filed a Petition for Contempt against Defendant Connelly for denying Plaintiff-Father reasonable phone time with O.W.C. and for sending O.W.C. to daycare over Plaintiff-Father's objection during the COVID-19 pandemic while he was available to care for her during the work week.

117.    Even thereafter, the phone time, arbitrarily limited by Defendant Larissa C. Connelly on Defendant Potts' advice to the period between 7 p.m. and 8 p.m., has rarely ever reached 15 minutes.

118.    In fact, Plaintiff-Father is presently only able to reach his daughter every third or fourth day, because Defendant Larissa C. Connelly routinely defies the order providing for phone time with Plaintiff-Father, by not facilitating the communication.

119.    Plaintiff O.W.C.'s tablet, which Plaintiff-Father purchased specifically for their communication, is often offline or turned off during the specified arbitrary period, and Plaintiff-Father cannot reach her.

120.    On or about July 27, 2020, Defendant Connelly, at Defendant Potts' direction, contacted Defendant Brian J. McCabe of the Pennsylvania State Police (P.S.P.), alleging that Plaintiff-Father had sent her text messages that were 'harassing.'

121.    On September 9, 2021, McCabe charged Plaintiff-Father with three (3) counts of harassment under 18 Pa. C.S.A. 2709 (a). The charges were filed the **day prior** to the hearing on Connelly's subsequently-filed petition for expedited relief, and **forty-four (44) days** after Defendant McCabe initiated his 'investigation', which will be explained in greater detail below.

122.    Defendant Connelly, at Defendant Potts' direction, had applied for these criminal charges knowing that Plaintiff-Father was in the Accelerated Rehabilitative Disposition (A.R.D.) program in Berks County for wholly unrelated charges from more than a year prior.

123.    Defendants Potts and Connelly were fully aware that Plaintiff-Father upon completion of A.R.D. would have a completely clean criminal record, but that additional charges, warranted or otherwise, would place Plaintiff-Father in danger of being removed from the program and the original charges reimposed.

124.    Defendants Potts and Connelly were also aware, or should have been aware, that Plaintiff-Father had completed all the terms of his A.R.D. 'probation' and had asked his then-attorney Paul S. Peters, Esquire to file a motion to terminate A.R.D., as Plaintiff-Father had (1) undergone a psychological evaluation (with the

VA); (2) completed an anger management program (with the VA); (3) had paid all of his court fines and costs; (4) had completed a substance abuse evaluation (with the VA) wherein no treatment was recommended; and (5) had completed over 40 hours of community service by picking up trash and recycling along the roads of Berks County, Pennsylvania.

125.   Defendants Potts and Connelly were also aware or should have been aware that Plaintiff-Father was expected to go from a contract employee to a regular employee at the end of 2020 with his employer, a major online pharmacy, and would need to undergo a background check to effectuate that transition.

126.   Thus, the criminal charges were solicited by Defendant Connelly at Defendant Potts' direction, to trigger termination of Plaintiff-Father's A.R.D. status and thereby destroy Plaintiff-Father's ability to gain and/or maintain employment, and to make it more difficult for him to litigate the custody matter regarding O.W.C.

127.   On October 12, 2020, Plaintiff-Father lost his $100,000 per annum position with a major online pharmacy due to the harassment charges filed by Defendants Larissa C. Connelly, Potts, and McCabe.

128.   Plaintiff-Father, in anticipation of losing his job, had applied to online retailer Amazon.com for $15.00 per-hour warehouse work and received an offer to hire starting October 21, 2020, contingent upon a background check.

129.   On October 27, 2020, Plaintiff-Father received an email from 'Accurate Background' stating:

> As you know, Amazon.com, Inc. or its subsidiaries or affiliates
> ("Amazon") procured a consumer report, also known as a background,
> check on you. We now write to advise you that Amazon is unable to make
> a decision regarding your eligibility for employment or continued

employment at this time. The reason for this is the existence of a pending criminal charge (or charges) against you. Once this matter has been resolved, we invite you to re-apply at Amazon.

130.    Plaintiff-Father received similar rejections from potential employers United Parcel Service, Ashley Furniture, and several others. He has filed charges of discrimination against these employers with the EEOC for improper discrimination on the basis of mere allegations.

131.    Until very recently, when Plaintiff-Father found a law firm willing to disregard the pending harassment charges, Plaintiff-Father had no choice but to drive for "delivery.com", a delivery service, making $2 per delivery plus tips on a 1099 because he could not obtain W-2 employment while the harassment charges were pending.

132.    In the interim, Plaintiff-Father was forced to withdraw, mid-semester, from his bachelor's program in mathematics with the University of Illinois at Springfield.

133.    Plaintiff-Father was also forced to declare Chapter 7 bankruptcy on February 10, 2021. *See In Re Connelly, Jr.*, No. 21-10334-pmm.

134.    At the time that the criminal charges were solicited from Defendant McCabe by Defendant Larissa Connelly at Defendant Potts' direction, it was only the most recent event in a clear history of abuse of civil and criminal process and attempted character assassination, perpetrated by Defendants Potts and Connelly which was calculated to unfairly prejudice Plaintiff-Father in his custody case regarding Plaintiff O.W.C.

135.   On August 31, 2020, Defendant Potts on behalf of Defendant Connelly filed an application for expedited relief. This application was again without basis in fact or law, and furthermore was not 'emergent' and should not have been qualified for expedited relief.

136.   Plaintiff-Father was not aware that there were pending criminal charges until his then-attorney, Paul S. Peters, Esq., shared Defendant Connelly's application for expedited relief with him.

137.   On September 9, 2020, **the day after** Plaintiff-Father was criminally charged with harassment, the expedited petition was 'heard' by Defendant Richard E. Lombardi ("Lombardi"), an attorney. There was no competent evidence presented at the hearing by Defendants Potts and Connelly, but all of it was nonetheless considered by Lombardi over Plaintiff-Father's attorney, Paul S. Peters, Esquire's objection.

138.   The extra-jurisdictional, illegal recommended order solicited from Defendant Lombardi by Defendants Potts and Larissa Connelly was transmitted to Plaintiff-Father's attorney by wire, to wit, via email, and upon information and belief, was uploaded to the Chester County Prothonotary and Family Court servers via internet protocols in interstate commerce.

139.   The Hon. Katherine B.L. Platt, J.C.C.P. ("Judge Platt") "rubber-stamped" the Order without review.

140.   This act likely constituted a violation of 18 U.S.C. § 1346, Honest Services Fraud (18 U.S.C. § 1346 defines the term "scheme or artifice to defraud," as used in the general statutes prohibiting use of the mails or wires to commit fraud, to include a scheme or artifice to deprive another of the intangible right of honest

services). Plaintiff-Father reserves all rights to the imputation of liability to Judge Platt pending discovery in this matter.

141.    The extra-jurisdictional, illegal recommended order solicited from Defendant Lombardi by Defendants Potts and Larissa Connelly and signed by Judge Platt was transmitted to Plaintiff-Father's attorney by wire, to wit, via email, and upon information and belief, was uploaded to the Chester County Prothonotary and Family Court servers via internet protocols in interstate commerce.

142.    Significantly, the "Lombardi" hearing and resultant order entered September 14, 2020, by Judge Platt ("September Custody Order") were also illegal according to the same arguments made against the July 2, 2020, Christman conference and the July Custody Order referenced above.

143.    Judge Platt erred in entering the September Custody Order where a conference was held and the parties had no agreement as to custody, no further hearing was scheduled, and no record was made, all in violation of 231 Pa. Code § 1915.4-2 and Plaintiff-Father's rights to due process of law under the Constitutions of the Commonwealth of Pennsylvania and the United States.

144.    Assuming, *arguendo*, that the September 9, 2020, proceeding was a 'conference' pursuant to 231 Pa. Code § 1915.4-2 (a), since the parties certainly did not agree and no subsequent hearing was scheduled, those proceedings were illegal under 231 Pa. Code § 1915.4-2 (a).

145.    Similarly, if the September 9, 2020, proceeding was a 'hearing' pursuant to 231 Pa. Code § 1915.4-2 (b), as no record was made, the proceedings and resultant recommendation and order were illegal pursuant to 231 Pa. Code § 1915.4-2 (b).

146.   Furthermore, 231 Pa. Code § 1915.4-2 (b)(4) provides for a twenty (20) day period for objections prior to the entry of the interim custody order. Here, the recommendation was issued on September 9, 2020, the day of the hearing (in fact Plaintiff-Father was on his way to pick up O.W.C. for a dinner visit when he was turned away by Defendant Connelly based on the 'supervised custody' provision of the recommendation), and the resultant order was entered into the docket by the Judge Platt five (5) days later, on September 14, 2020, in violation of 231 Pa. Code § 1915.4-2 (b)(4). See 231 Pa. Code § 1915.4-2 (b)(4).

147.   Moreover, as with the July Custody Order, the September Custody Order is also patently illegal and void *ab initio* because it did not include the language required by Chester County Local Rule of Court 1915.4.A(b)(2) and will likely be vacated on appeal.

148.   There was little to no competent evidence presented at the hearing by Defendant Larissa C. Connelly through Defendant Potts, but all of it was nonetheless considered by Defendant Lombardi over Plaintiff-Father's attorney's objection.

149.   Defendant Lombardi's recommendation was, unsurprisingly, beyond the pale of rational, competent jurisprudence, and is *per se* evidence of collusion and conspiracy with Defendants Connelly and Potts.

150.   In a now-familiar pattern, Defendants Potts and Connelly again received *carte blanche*, this time from Lombardi, who recommended a draconian order unsupported by facts or law. The most egregious of these terms was the limiting of Plaintiff-Father's parenting time to six (6) hours on every other Saturday under supervised custody at Plaintiff-Father's cost.

151.   Significantly, the order also explicitly limited Plaintiff-Father's phone time with Plaintiff O.W.C. to fifteen (15) minutes per day. Again, Defendant Lombardi simply allowed Defendant Potts, his friend, to place an order for her client's relief *a la carte*, with no regard for the law or the competent evidence (if any).

152.   This meant that Plaintiff O.W.C. could no longer visit Plaintiff-Father at his home, where she had her own room, now 2 cats and 2 dogs, several toads, and crickets (for the toads), a worm farm and organic garden, and where she spent time with her brother, Plaintiff T.P.C., III, and sister, Plaintiff E.M.C. whom she adores, and whom, as noted above, Plaintiff-Father had at that time every weekend by informal agreement with Plaintiff-Father's first wife, Defendant Dora Kassel.

153.   Plaintiff-Father and his children would have campfires, watch movies on the wall via a projector, and Plaintiff-Father was teaching his children archery and marksmanship on an air rifle.

154.   Defendant Lombardi's 'recommendation' furthermore meant that O.W.C. would be unable to continue her horseback riding lessons at the Corner House Farm, where she was learning to ride 'Rusty', nor could she continue with 'Soccer Shots.'

155.   Until the July and September custody 'proceedings', Plaintiff O.W.C. had attended these activities with Plaintiff-Father, every weekend. O.W.C. and Plaintiff-Father also enjoyed fishing, hiking around the local reservoir, painting, writing stories, having toad races Mark Twain style, and visiting the Reading Museum, one of her favorite places, and where O.W.C. met her first friend in the Reading area.

156. Most significantly, Plaintiff-Father, having lost his employment due to the frivolous harassment charges, could not and cannot even now afford the substantial fees for supervised visitation, and has not seen O.W.C. in person since the Lombardi proceeding on September 9, 2020.

157. In addition to being based on incompetent evidence, Defendants Potts and Connelly's expedited relief petition was replete with material factual errors and omissions in a calculated and deliberate attempt to unfairly prejudice Plaintiff-Father.

158. For example, Defendant Potts represented to Defendant Lombardi that SoberLink tests that were taken in full compliance with the order were 'missed' because the SoberLink system only operates on full hours whereas the order specified testing at 10:30 p.m.

159. It was wholly disingenuous and frankly fraudulent for Defendant Potts to have made this argument because Plaintiff-Father long before had requested that the SoberLink agreement be amended to accurately reflect the terms of the July 8, 2020, Order, and Defendants Potts and Connelly refused to respond.

160. Furthermore, missed, or positive tests during non-custodial periods were urged upon Defendant Lombardi by Defendant Potts as evidence that the emergent relief should be granted, which was wholly inappropriate.

161. A single positive test during Plaintiff-Father's custodial time inside the legal limit of .08 was offered by Defendant Potts and considered by Defendant Lombardi as evidence of intoxication at a prior time.

162.   Defendant Potts argued on a relation-back theory that the undersigned was legally intoxicated. This was wholly improper as Potts was not an expert in toxicology and could not properly give relation-back opinion testimony.

163.   More importantly, there was no order in effect that prohibited intoxication, above the legal limit or otherwise, during Plaintiff-Father's custody periods or otherwise.

164.   Furthermore, there was no basis for the SoberLink requirement to begin with, as the July Custody Order was entered in Plaintiff-Father's absence and in clear violation of his due process rights and without his input.

165.   Nonetheless, Defendant Lombardi accepted this wholly incompetent evidence as the lynchpin of Defendant Larissa C. Connelly's claim for expedited relief, as if it were somehow a violation of an order of the court.

166.   Defendant Lombardi furthermore considered the affidavit of probable cause from Plaintiff-Father's then year-old A.R.D. case, which had absolutely nothing to do with Defendant Larissa C. Connelly or O.W.C., but in fact occurred while Plaintiff-Father was living away from home during the workweek to provide for Plaintiff O.W.C. and Defendant Larissa C. Connelly, who refused to work.

167.   The charges against Plaintiff-Father and most notably the affidavit of probable cause considered by Lombardi were hearsay, out-of-court statements offered for the truth of the matter asserted to which no exception applied.

168.   Moreover, these were mere allegations and of course only one side of the story. None of it was competent evidence but was maliciously proffered by Defendant Larissa C. Connelly through Defendant Potts and accepted by Lombardi in

an illegal and collusive scheme to further truncate Plaintiff-Father's parental rights without basis.

169.   The allegations against Plaintiff-Father, which proceeded from a bar fight wherein Plaintiff-Father was attacked by four male bar patrons after putting his arm around the waist of a woman he had met there, and wherein Plaintiff-Father's ankle was broken in three places by either the three police officers and/or the four male bar patrons involved, were falsely and maliciously characterized by Defendant Larissa C. Connelly through Potts, and considered by Defendant Lombardi, as an "attempted kidnapping."

170.   Plaintiff-Father was not charged with attempted kidnapping, which is a felony. Rather, all the charges were misdemeanors that have since been dismissed and expunged, despite Defendants Potts' and Larissa C. Connelly's attempts to interfere. *See Commonwealth v. Connelly*, Docket No. CP-06-CR-0003185-2019.

171.   Furthermore, Defendant Connelly's defamatory statements through Defendant Potts, most notably the attempted kidnapping accusation, represented clear violations 204 Pa. Code § 3.3 (a)(1), which prohibits a lawyer's making "a false statement of material fact or law to a tribunal." 204 Pa. Code § 3.3 (a)(1).

172.   Defendant Potts' false and malicious statements also represent a violation of 204 Pa. Code § 4.4 (a), which prohibits a lawyer's using means "that have no substantial purpose other than to embarrass, delay, or burden a third person…" 204 Pa. Code § 4.4 (a).

173.   Defendants Potts and Lombardi were/are 'Facebook friends', and they clearly colluded and conspired to manufacture a recommended order that was not

consistent with the competent evidence and applicable case law, that was wholly prejudicial to Plaintiff-Father, and that was intended only to harass and abuse Plaintiff-Father.

174. Defendant Lombardi's corruption and incompetence are well-known by the litigants of Chester County, and not limited to Plaintiff-Father. *See* https://chestercountyrants.wordpress.com/2009/10/13/who-is-lombardi-chester-county -family-court-talk-about-corrupt-custody-issues/.

175. Defendant Potts refused to produce the allegedly actionable messages sent from Plaintiff-Father to Defendant Larissa C. Connelly at issue in this case but argued them orally to Defendant Lombardi anyway, an obvious ethical impropriety.

176. Plaintiff-Father believes that Defendant Potts, who touts her experience as a former Chester County Assistant District Attorney (ADA) on her website and knowing that she had directed Defendant Larissa C. Connelly to bring the frivolous harassment charges based upon the same messages, did not want Plaintiff-Father to have access to 'discovery' prior to the preliminary hearing on these charges, again indicating Defendants Potts' and Larissa C. Connelly's malicious intent.

177. Furthermore, Defendant Potts stated at the hearing that it was expected that Defendant P.S.P. Officer McCabe would charge Plaintiff-Father on Connelly's harassment claims, indicating that the two were in communication before the filing of the charges on September 8, 2020, **the very day before the hearing**. Plaintiff-Father believes that Defendant Potts was lying and that she knew very well that Plaintiff-Father had been charged.

178.   The filing of the charges on the day prior to the hearing after forty-six (46) days of Defendant McCabe's supposed 'investigation' was certainly not a coincidence.

179.   As will be explained in further detail below, Plaintiff-Father is entitled to forensic examination of Defendant McCabe's personal cell phone as a matter of criminal due process and expects to be able to prove improper and collusive communications between Defendants Potts and McCabe.

180.   Notably, Defendant Potts' "favorite" message was one sent by Plaintiff-Father to Defendant Connelly that stated (paraphrasing) that Potts was 'an ex-ADA hack who thinks she is still trying criminal cases and has no business practicing family law' where children's well-being is at stake.

181.   Clearly, Defendant Potts had become personally involved in Defendant Larissa C. Connelly's matter and was acting on her own behalf rather than her client's, thus subjecting Connelly to significant civil liability.

182.   The above legal proofs are made in the instant matter to show the illegality of the September 9, 2020, proceeding and the resultant order, and the course of conduct of Defendants Potts, Larissa C. Connelly, and Lombardi in their apparent conspiracy to abuse civil process and to commit fraud, via interstate wire and/or the mail, calculated to give Connelly an unfair advantage in the custody matter regarding O.W.C.

183.   This illegal and collusive scheme was enabled by the willful and calculated violation of 231 Pa. Code § 1915.4-2 which allowed Defendants Christman and Lombardi to enter wholly-baseless recommended orders later rubber-stamped by

judges of the Chester County Court of Common Pleas, without any accountability to the competent evidence whatsoever.

184.    Plaintiff-Father is legally trained and recognized that he had been 'railroaded' by Defendants Christman and Lombardi through improper coordination with Defendants Connelly and Potts. He asked his attorney, Mr. Peters to withdraw, but this did not occur until December 3, 2020.

185.    On September 24, 2020, Plaintiff-Father served Defendant Larissa C. Connelly with a complaint filed in Berks County on September 9, 2020, alleging common law abuse of process and other claims.

186.    The suit was later withdrawn on the advice of Plaintiff-Father's then-counsel, Samuel L. Stretton, Esq. to foster settlement communications, which were then refused by Defendant Potts.

187.    On the next day, September 25, 2020, Defendant Larissa C. Connelly, again at Defendant Potts' direction, filed a protection from abuse (P.F.A.) petition against Plaintiff-Father based on selected messages that Plaintiff-Father sent to Defendant Connelly advising her of the Berks County suit and threatening further litigation after Defendant Connelly cut short his phone call with O.W.C. without basis, as Connelly and her mother, Defendant Janet Prewitt had been frequently doing.

188.    Upon information and belief, Defendant Connelly's P.F.A. filing was made at Defendant Potts' urging, and Exhibit "A" thereto was authored by Defendant Potts and was in retaliation for Plaintiff-Father's filing of the abuse of process case in Berks County.

189.    Plaintiff-Father had offered an apology and an 'olive branch' prior to the filing and service of Defendant Larissa C. Connelly's P.F.A. against him on September 25, 2020.

190.    Furthermore, Plaintiff-Father had prefaced his allegedly actionable remarks with a copy of the Berks County civil complaint and a letter in draft form to defense counsel in ".rtf" format stating his position.

191.    Plaintiff-Father's remarks subject to the P.F.A. action, (although admittedly crude) threatened at most litigation, not physical violence, and in  no sense placed Defendant Larissa C. Connelly "in reasonable fear of imminent bodily injury," the threshold for judicial action under Pennsylvania's Protection from Abuse laws. See 23 Pa. C.S.A. § 6102.

192.    As is clear from the foregoing, the September 25, 2020, P.F.A. application, much like Defendants Connelly and Potts' other filings, was meritless and intended only to harass and abuse Plaintiff-Father and to cause delay of his custody matter, in violation of 204 Pa. Code § 4.4 (a) (in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person…"). 204 Pa. Code § 4.4 (a).

193.    In filing her P.F.A. Petition against Plaintiff-Father, Defendant Larissa C. Connelly, through Defendant Potts, defamed Plaintiff-Father, having alleged that Plaintiff-Father was an 'alcoholic' and psychiatrically impaired. These statements were false.

194.    Plaintiff-Father, who as noted is a disabled veteran of the United States Navy, honorably discharged, has undergone, pursuant to his Berks County A.R.D.